# VIRGINIA GOMES *v.* THE PORTUGUESE MUTUAL BENEFIT SOCIETY OF HAWAII.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JUNE 27, 1901.          DECIDED AUGUST 8, 1901.

FREAR, C.J., GALBRAITH, J., AND L. ANDREWS, ESQ., OF THE

BAR, IN PLACE OF PERRY, J., DISQUALIFIED.

The by-laws of a mutual benefit society permitted a sick member to elect either "$1.25 a day during his illness" or "medical attendance, medicine and half a dollar a day," or the amount of his hospital bill up to $1.25 a day. A sick member elected "medical attendance," &c., but afterwards went to a hospital after being informed by the Society's officers that if he did so he could have only $1.25 a day. He also signed a note for $400 loaned by the Society to pay for an operation at the hospital. Held, he changed his election from the second to the third class of benefits and that therefore the note was not void for want of a consideration, assuming that the Society would have been liable for the operation as "medical attendance" in case the member had continued under his first election and that the note would in such case have been void.

## OPINION OF THE COURT BY FREAR, C.J.

This is a bill in equity by the widow of a late member of the defendant corporation for a discovery of matters relating to the benefit due her from the defendant on the death of her husband; for an accounting concerning such benefit; and for the cancelation of a certain note which the Society desires to set off against such benefit.

The defendant Society admits that it owes the plaintiff a death benefit amounting to $899 but contends that it is entitled

to set off against this a note for $400 payable to it signed by the plaintiff and her husband in consideration of a loan of that amount advanced to pay for an operation performed upon the husband, from the effects of which he died. The plaintiff contends that the Society was obliged to pay for the operation as a sick benefit by the terms of its by-laws and that the note is void either because it was procured by the misrepresentation of the Society's officers that the Society would not be liable for the cost of the operation or because there was no consideration for the note inasmuch as it was given for a payment which the Society was bound to make in any event.

The provision of the by-laws in question reads as follows:

"Article 14. The Society grants to members having a year's membership the following benefits:

(1) At the member's option $1.25 a day during his illness; or medical attendance, medicine and half a dollar a day; or the amount of his hospital bill and a sum in cash sufficient to make up, with the hospital bill, the sum of $1.25 per day.

(2) The Society is in no case authorized to pay to any hospital for treatment of a member more than $1.25 per day."

Neither party contends that the case is within the first of the three classes of benefits mentioned in this by-law, that is, "$1.25 a day during his illness." The plaintiff contends that it is within the second class, that is, "medical attendance, medicine and half a dollar a day." The Society contends that it is within the third class, namely, "the amount of his hospital bill," &c. If it is within the third class, it is clear that the sick benefit could not exceed $1.25 a day for the seven days that the plaintiff's husband was at the hospital (which sum, amounting in all to $8.75, the Society is ready to pay) and there could in such case be no fraud or misrepresentation or want of consideration and the note would be valid. If the case comes under the second class the defendant would be liable for "medical attendance" in addition to "half a dollar a day" whatever the amount might be, for the limitation to $1.25 a day does not apply to that class. In such case the further questions would arise whether "medical

attendance" would include a capital operation (for stricture of the œsophagus) costing $400 and, if it did, whether the note would be void under the circumstances. It will be unnecessary for us to consider these questions as we are of the opinion that the case comes within the third class above mentioned.

The decedent was taken ill April 17, 1899, and then elected the second class of sick benefits, namely, "medical attendance," &c. The question is whether he changed his election to the third class afterwards when he went to the hospital. On May 29 the decedent decided on the advice of his physician to go to the hospital and have the operation performed. He so notified one of the officers of the Society who in turn notified its president. The officers explained to him that if he went to the hospital he would be entitled to only $1.25 a day. There seems to be some doubt as to what the various officers thought as to whether the decedent would be entitled to the amount of the fee for the operation as part of the "medical attendance" if he had the operation performed at home, though that point apparently did not receive much attention. The reasons for going to the hospital were that the chances of recovery would be greater and the cost less. On the next day the removal was made to the hospital. As the surgeon wanted his fee in advance and the patient was without sufficient means, it was arranged that the Society should loan the amount required, $400, which was to cover everything—nurses, food, room, &c., as well as the operation—and accordingly the note in question was given. The Society's officers required the signature of the wife as well as that of the husband for further security as they were without authority to make the loan except on a mortgage of real estate valued at twice the amount loaned. They made the loan without out authority because of the emergency and trusted that the Society would ratify it, which it afterwards did. The officers we believe acted in good faith and explained the situation to the signers of the note and the latter signed with full understanding as to what they were doing. If there was any misunderstanding, it was as to the proper construction of the by-

laws of the Society and was shared by all concerned. The Society's conduct afterwards so far as shown by the minutes of the meetings of its General Council was consistent throughout with the theory that it considered the note good and itself not liable for the cost of the operation. The Board of Directors, as it is called by the witnesses, which we suppose is the "Managing Committee" mentioned in the by-laws, seems to have had most to do in regard to sick benefits. The minutes of the meetings of this Board in regard to the sick benefits were not as consistent as those of the General Council in regard to the note. They show that the decedent was reported on April 19, 1899, as sick on April 17, demanding medical attendance and fifty cents a day. By whom the report was made and whether it was made with the authority of the sick man does not appear. The practice was for some member of the Board to report orally and if the claim was not rejected it was considered good and no word was sent to the applicant. The minutes of the meeting of June 5 show that the patient was dropped from the list as of May 29, that it was voted to pay $21.50, that is, fifty cents a day for the period of his illness at home, 43 days, from April 17 to May 29, and $69.50 for medical attendance during that period. At the same meeting the patient was also reported as sick on May 30, demanding $1.25 a day. It does not appear by whom this report was made or whether it was authorized by the patient. In October it appears that the Board voted to pay $3.50, that is, fifty cents a day, for the time the patient was at the hospital, May 31 to June 6, the latter date being that on which he died. But later the Chairman of the Board said that this was a mistake and refused to sign the check for the amount and ordered a counter entry made which was done in January, 1900. In February, 1900, the Board voted to pay $8.75, that is, $1.25 a day, for the time the decedent was at the hospital.

Although the evidence is not as satisfactory as could be desired, we are of the opinion that the trial Judge did not err in finding that the decedent changed his election from the second to the third class of sick benefits when he went to the

hospital. He decided to go to the hospital after several of the
Society's officers had told him that if he did go he would be
entitled to only $1.25 a day, while if he remained at home he
would be entitled to medical attendance and fifty cents a day.
He also signed the note after having been so informed, although
it is true also that some of the officers told him that the Society
did not pay for operations at all. It would be natural for him
as well as for the officers to construe the by-laws as not entitling
him to more than $1.25 a day if he went to the hospital. If he
would have been entitled to the cost of the operation in case he
had remained at home, still he did elect to go to the hospital
and upon the understanding of all interested that if he went
he would not be entitled to that amount. And that understand-
ing, if erroneous, was shared in by all, and was at most a mere
mistake of construction. It is indeed at least very doubtful if
the patient could elect to go to the hospital and yet elect to
continue under the second class of benefits. For the hospital
bill, or at least part of it, might be for services properly classed
as "medical attendance" (see *Scott v. Winneshiek County*, 52
Ia. 580) and might amount to more than $1.25 a day, in which
case the Society would be obliged, if the patient was in the
second class, to pay more than $1.25 a day to the hospital, con-
trary to the provision of the by-laws. There would seem to be
some inconsistency between going to the hospital and incurring
expenses that would naturally be included in "medical attend-
ance" and in regard to which the liability of the Society was
limited, and at the same time being entitled to "medical attend-
ance" as such, in regard to which the liability of the Society
was not limited. It could hardly have been the intention in
framing this by-law that a member could choose "medical
attendance" and then go to a hospital and claim up to $1.25 a
day on such of his hospital bill as came under "medical attend-
ance" and also the fee of an outside physician or surgeon for an
operation or other services performed by him at the hospital and
half a dollar a day. In this case the hospital seems to have been

conducted by the surgeon and the fee or charge in question included everything.

The decree dismissing the bill is affirmed.

*W. A. Whiting, W. J. Robinson* and *J. M. Vivas* for the plaintiff.

*J. T. De Bolt* for the defendant.